**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>             Plaintiff,<br><br>v.<br><br>Lino Anthony Guerrero,<br><br>             Defendant. | No. CR-23-01756-001-TUC-RM (BGM)<br><br>**REPORT AND RECOMMENDATION** |

      Before the Court is Defendant Lino Anthony Guerrero's Motion to Suppress.  (Doc. 12).  Pursuant to Local Rule of Criminal Procedure 5.1, this matter was referred to Magistrate Judge Bruce G. Macdonald for a report and recommendation.  The motion has been fully briefed and an evidentiary hearing on the motion has been held.  (Docs. 26, 50, 53.)  The Magistrate Judge recommends that the District Judge, after her independent review, deny Defendant's motion.

## FACTUAL FINDINGS[1]

      The city of Douglas, Arizona, is situated on the United States/Mexico border in the southeastern part of the state.  (Tr. 11:10-14;[2] Pl.'s Ex. 1.)  State Route 80 extends northeast from Douglas and travels through the eastern New Mexico state line.  (*Id.* 11:14-20.)  The area along State Route 80 headed eastward toward New Mexico is desolate.  (*Id.* 15:11-

---

[1] Evidence presented at a suppression hearing is viewed in the light most favorable to the government. *United States v. Sherman*, 430 F.2d 1402, 1404 (9th Cir. 1970).

[2] The abbreviation "Tr." is used to designate the official transcript of the May 20, 2024 evidentiary hearing on Defendant's motion to suppress.

12.)  There are no gas stations, convenience stores, or anything for which an individual would travel there.  (*Id.* 15:17-22.)  Douglas' proximity to the border and low police presence make it a popular location for alien smuggling.  (*Id.* 16:19-21.)

On October 21, 2023, during a pre-shift meeting, United States Border Patrol Agent Carl Petry learned that a vehicle previously involved in alien smuggling had passed through the Douglas Port of Entry headed northbound into the United States.  (*Id.* 22:1-8.)  United States Customs and Border Protection office of field operations relayed that a white Ford Expedition bearing an Illinois license plate had been used in prior smuggling attempts and that it believed it was going to be used again in another smuggling attempt.  (*Id.* 22:5-8.)

After the meeting, Agent Petry conducted an independent records check, which revealed that a known "crosser"[4] had driven the vehicle northbound across the border earlier that day.  (*Id.* 23:3-5; 25:14-20.)  Shortly thereafter, the same driver crossed in a different vehicle also heading northbound into the United States.  (*Id.* 24:15-18.)  Petry recognized this crossing activity as a common tactic among smuggling organizations, in which a driver brings a vehicle north across the border and leaves it at a preplanned location so another person can use the vehicle for smuggling.  (*Id.* 24:19-25:1.)  Petry testified that he was familiar with this tactic from his Border Patrol experience with smuggling organizations along the southern United States border.  (*Id.* 12:18-25; 25:4-13.)

While performing a roving patrol later that night, Petry positioned his vehicle at mile marker 376 on State Route 80.  (*Id.* 29:12-15.)  Approximately 15 to 30 minutes later, he observed a white Ford Expedition traveling westbound toward Douglas.  (*Id.* 30:14-16.)  The Expedition matched the description of the vehicle discussed in the pre-shift meeting including its Illinois license plate number.  (*Id.* 30:20-31:2.)  Petry followed the Expedition and attempted an additional records check on the vehicle.  (*Id.* 31:5-7.)  While the records check was inconclusive, Petry noticed that the vehicle periodically drifted within its lane.  (*Id.* 32:2-4.)  Based on the pre-shift meeting information about a suspected white Ford

---

[4] The term "crosser" refers to a person who drives vehicles across the United States/Mexico border for use in smuggling activities. (Tr. 28:5-8.)

Expedition engaged in alien smuggling, the information Petry gleaned from his own independent investigation, and his ongoing observations of the vehicle, Petry conducted an investigatory stop of the vehicle, which he initiated around 12:30 a.m. on October 22, 2023. (*Id.* 33:19-24; 37:3.)

After Agent Petry stopped the vehicle, Defendant Guerrero, who was the Expedition's driver, caused confusion and concern by opening his car door and exiting the vehicle.  (*Id.* 35:23-36:21.)  Petry then commanded Guerrero to sit down.  (*Id.* 38:13-14.)  As Guerrero started to sit, Petry realized that the Expedition's engine was still running. (*Id.* 38:16-19.)  Concerned that Guerrero might flee, Petry attempted to handcuff him, when Guerrero tensed his muscles, ignored Petry's commands, and ultimately fled on foot.  (*Id.* 40:6-41:22.)  After Guerrero fled the scene, Agent Petry discovered six undocumented citizens lying down in the middle and back of the Expedition.  (*Id.* 42:17-20.)  Roughly two hours later, agents apprehended and arrested Guerrero in the desert.  (*Id.* 44:4-12.)

## LEGAL STANDARD

The Fourth Amendment's prohibition against unreasonable searches and seizures extends to brief investigatory stops.  *United States v. Jimenez-Medina*, 173 F. 3d 752, 754 (9th Cir. 1999).  Roving Border Patrol agents may conduct brief investigatory vehicle stops without violating the Fourth Amendment, "if the [agent's] action is supported by reasonable suspicion to believe that criminal activity may be afoot." *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).  "Reasonable suspicion requires specific, articulable facts which, together with objective and reasonable inferences, form a basis for suspecting that a particular person is engaged in criminal conduct." *United States v. Thomas*, 211 F.3d 1186, 1189 (9th Cir. 2000) (cleaned up).

The threshold to reach reasonable suspicion is not particularly high.  *Valdes-Vega*, 738 F.3d at 1078.  It is less than probable cause, and "falls considerably short of satisfying a preponderance of evidence standard."  (*Id.*) (quoting *Arvizu*, 534 U.S. at 274).  The government bears the burden of showing that reasonable suspicion exists to conduct a

1    warrantless search.  *United States v. Cervantes*, 703 F. 3d 1135, 1141 (9th Cir. 2012); *see*
2    *also* 6 Wayne R. LaFave, Search and Seizure § 11.2(b) (6th ed. 2022).  When making
3    reasonable suspicion determinations, courts are to consider the "totality of the
4    circumstances" of each case.  *Arvizu*, 534 U.S. at 273.

5                                        **DISCUSSION**

6             Defendant Guerrero brings the motion at hand asserting that the Court should
7    suppress the evidence found after his October 22, 2023 traffic stop because the Government
8    did not have reasonable suspicion to stop him.  (Doc. 12 at 1:20-22.)  Guerrero asserts that
9    Agent Petry stopped him based on an association with past criminal activity and proximity
10   to the border and that these two factors, alone, are insufficient to establish reasonable
11   suspicion.  (*Id.* 7:6-8.)  The Government asserts that Petry had reasonable suspicion to stop
12   Guerrero based on the totality of the circumstances.  (Doc. 26 at 4-8.)  It notes that the area
13   surrounding Douglas, Arizona, is known for alien smuggling; prior to his shift, Petry was
14   advised to be on the lookout for the specific vehicle that Guerrero was driving; Petry
15   conducted an independent investigation where he learned that the vehicle had crossed into
16   the United States earlier that night; and that at the time of the vehicle's stop, it lacked a
17   registered owner and the driver was drifting within the lane.  (*Id.* at 2, 7-8.)  Viewing the
18   evidence in the light most favorable to the Government, the Court concludes that Agent
19   Petry had reasonable suspicion to conduct a brief investigatory stop of Guerrero's vehicle,
20   and it recommends that his motion to suppress be denied.

21   **I.      Government Demonstrates Reasonable Suspicion for Stop**

22            When analyzing whether a Border Patrol agent had sufficient reasonable suspicion
23   to conduct an investigatory stop, courts look at the totality of the circumstances, rather than
24   reviewing factors in isolation.  *Valdes-Vega*, 738 F.3d at 1078.  Reasonable suspicion can
25   also be based upon the collective knowledge of officers even if not all that information has
26   been communicated to the arresting officer, *cf. United States v. Butler*, 74 F.3d 916, 921
27   (9th Cir. 1996) (discussing probable cause), and a determination that reasonable suspicion
28   exists need not rule out the possibility of innocent conduct, *Arvizu*, 534 U.S. at 277.  In the

context of investigatory stops near the border, the totality of the circumstances may include: (i) characteristics of the area; (ii) proximity to the border; (iii) usual patterns of traffic and time of day; (iv) previous alien smuggling in the area; (v) behavior of the driver; (vi) appearance or behavior of the passengers; and (vi) model and appearance of the vehicle. *Valdes-Vega*, 738 F.3d at 1079.  A "be-on-the-lookout" (BOLO) alert may also be considered in a reasonable suspicion analysis. *See, e.g.*, *United States v. Haro*, No. 20-50354, 2021 WL 6101347, at *2 (9th Cir. Dec. 21, 2021) (ruling that a BOLO can be used to provide a particularized and objective basis for a stop); *United States v. Al Zoubani*, No. CR-21-111-001-TUC-SHR (LAB), 2022 WL 2800932, at *4 (D. Ariz. July 18, 2022) ("While not a dispositive factor, a BOLO alert is given some weight in the reasonable suspicion analysis."). Not all of these factors must be present to justify reasonable suspicion, and the facts are to be filtered through the lens of the agent's training and experience. *Valdes-Vega*, 738 F.3d at 1079.

At the evidentiary suppression hearing, the Government offered more than sufficient, unrefuted evidence that Agent Petry had a particularized and objective basis to suspect that Guerrero was engaged in illegal activity to stop his vehicle. *See United States v. Cotterman*, 709 F.3d 952, 968 (9th Cir. 2013) (cleaned up) ("Reasonable suspicion is defined as a particularized and objective basis for suspecting the particular person stopped of criminal activity.").  Prior to his shift, Petry was given a BOLO alert for a white Ford Expedition bearing a specific Illinois license plate, which had been previously used for alien smuggling. (Tr. 22:1-8; 23:1-2.) Petry conducted further research on the vehicle and discovered a suspicious crossing history which indicated that the vehicle may have been brought across the border for use in smuggling activities. (*Id.* 23:3-5; 24:15-25:1.) When Agent Petry encountered the vehicle later that night, it was traveling in a remote area known for alien smuggling, less than ten miles from the border. (*Id.* 15:16-19; 16:19-21; 29:13-15.)  As Petry followed the vehicle, he observed it drifting within its lane. (*Id.* 32:2-4.) After attempting another records check, which failed to return vehicle owner information, Petry decided to conduct a brief investigatory stop of the vehicle. (*Id.* 31:7-10; 33:19-22.)

Guerrero either failed to effectively refute or conceded all of these facts at the evidentiary suppression hearing.  (*See generally, id.* 46:16-58:3.)  Accordingly, upon viewing the evidence in the light most favorable to the Government, and considering the totality of the circumstances, the Court concludes that Agent Petry had reasonable suspicion to conduct an investigatory stop of Guerrero.[5]

## RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court DENY Defendant's Motion to Suppress (Doc. 12).  Pursuant to Federal Rule of Criminal Procedure 59, any party may serve and file written objections within 14 days of being served a copy of this Report and Recommendation. Fed. R. Crim. P. 59(b)(2). A party may respond to the other party's objections within 14 days. LRCiv 7.2(c). No reply shall be filed unless leave is granted by the District Court. If objections are filed, the following case number should be used: **CR-23-01756-RM-1**. Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review. Fed. R. Crim. P. 59(b)(2).

Dated this 11th day of June, 2024.

Honorable Bruce G. Macdonald
United States Magistrate Judge

---

[5] Because the Court concludes that Agent Petry had reasonable suspicion to conduct an investigatory stop of Defendant's vehicle, it declines to address any subsequent issues of abandonment.